## INTERNATIONAL HARVESTER CO. v. VOBORIL.

(Circuit Court of Appeals, Eighth Circuit. April 24, 1911.)

No. 3,449.

1. CONTRACTS (§ 95*)—VALIDITY OF ASSENT—DURESS.

Duress, which will avoid a contract, may be caused by threats of a criminal prosecution of a husband, wife, child, or other near relative of the person whose action is thereby controlled, though no crime has been in fact committed or prosecution begun, if the contracting party has been so put in fear as to be deprived of the free will power essential to contractual capacity.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 431–440; Dec. Dig. § 95.*]

2. CONTRACTS (§ 95*)—VALIDITY OF ASSENT—EVIDENCE OF DURESS.

In determining the question of duress which will avoid a contract, sex, age, state of health, family conditions, etc., may be considered, with the other circumstances.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 431–440; Dec. Dig. § 95.*]

3. EVIDENCE (§ 220*)—WITNESSES (§ 275*)—CROSS-EXAMINATION—CONDUCT INCONSISTENT WITH TESTIMONY.

Where a defendant, sued on promissory notes which she had signed as guarantor for her husband, testified to facts tending to establish the defense that she signed under duress, questions intended to show that when the notes were presented at maturity defendant made no claim of duress, but sought to obtain further time, were proper as cross-examination, and tended to elicit competent evidence.

[Ed. Note.—For other cases, see Evidence. Cent. Dig. §§ 771–785; Dec. Dig. § 220;* Witnesses, Cent. Dig. §§ 924, 926, 967–975; Dec. Dig. § 275.*]

In Error to the Circuit Court of the United States for the District of Nebraska.

Action at law by the International Harvester Company of America against Anna Voboril. Judgment for defendant, and plaintiff brings error. Reversed.

John Lee Webster, for plaintiff in error.

Charles H. Slama, for defendant in error.

Before HOOK and ADAMS, Circuit Judges, and RINER, District Judge.

HOOK, Circuit Judge. In an action by the International Harvester Company against Anna Voboril upon promissory notes given for debts of her husband, her defense was that her signature was obtained by duress, through threats by representatives of the company that, unless she signed, her husband would be arrested and imprisoned. There was a verdict and judgment for the defendant, which the plaintiff desires reviewed.

[1] As to plaintiff's motion for a directed verdict, it must be said there was sufficient proof of the threats for the consideration of the jury. It is not our province to weigh conflicting evidence, or to consider inconsistencies in the testimony of witnesses. It is contended, however, that, even if the threats were made, they could not in law

have caused duress, because defendant's husband had committed no offense, there was no officer present to make an arrest, and no warrant had been issued or proceeding commenced against him. The contention is untenable. Duress may be caused by threats of a criminal prosecution of a husband, wife, child, or other near relative of the person whose action is thereby controlled, though no crime has in fact been committed or prosecution begun. If the contracting party has been so put in fear as to be deprived of the free will power essential to contractual capacity, the transaction thereby induced may be avoided. A valid contract implies mutual voluntary assent of the parties; and if one of them overcomes the mind and will of the other by moral compulsion, and so obtains his concurrence, though the form and shell of a contract exist the very essence of it is wanting.

[2] Susceptibility to coercive influence is not uniform, and, in determining the question of duress, sex, age, state of health, family conditions, etc., may be considered with the other circumstances. In the case at bar the plaintiff had no claim against the defendant. The debtor was her husband, who had failed in business. Primarily she was neither legally nor morally responsible. The representatives of the plaintiff sought to obtain her guaranty of his obligations and to bind her separate estate for their payment. She was of Bohemian extraction and apparently ignorant of business affairs. She was the mother of seven children, the eldest of whom was 14 years of age, and was pregnant with an eighth. We must assume from the verdict and evidence that threats were made to have her husband arrested and jailed unless she signed and guaranteed the notes, and we cannot say as matter of law they were insufficient under the circumstances to deprive her of that freedom of will essential to voluntary action. All men appreciate how susceptible the mind of a wife and mother is to such influences, and how she may be coerced to give up her property when the liberty of husband and father is believed to be at stake. It should be mentioned in this connection that the court excluded some of the testimony as to the condition of defendant and the state she was put in by the threats, which should have been admitted. It bore upon the vital feature of the defense.

[3] The defendant having testified in her own behalf that the threats were made, and also to their effect upon her at the time, the plaintiff sought to show on cross-examination that when the notes matured, about three months after they were signed, and she was asked to pay them, she made no claim of duress but said instead that she could not pay until she could borrow the money or sell some of her property. Upon objection of defendant's counsel, the trial court excluded the evidence. We think it should have been received. It was clearly within the scope of proper cross-examination, as it affected the truthfulness of her assertions; and, as there was much conflict in the evidence upon the subject, its exclusion was manifestly prejudicial. The general rule is that the failure of a person to assert a fact, when it would have been in the natural, ordinary course for him to assert it, is evidence tending to show the non-existence of the fact. In Corser v. Paul, 41 N. H. 24, 77 Am. Dec. 753, the failure

of defendant, upon seeing a note presented for payment, upon which his name appeared as a maker, to declare the signature a forgery, was held evidence of its genuineness. Such evidence, however, is to be received with caution; but, when received, its weight is for the jury, and as to that much depends upon how provocative the situation was to speech—how significant the silence.

The judgment is reversed, and the cause is remanded for a new trial.